In February, 1780, and for a long time preceding, William Massey was seized in fee, in the county of Franklin, of the premises in question; and in that month the administrator of Thomas Bell, deceased, brought suit in the county court of Franklin for the recovery of a sum of money due from the said William Massey to the said Thomas Bell in his lifetime; and in the said term had a judgment by default, which was continued from term to term till June Term, 1783, at which term they obtained a final judgment; but before the issuing of any writ of execution, in the month of August, 1783, the defendant Massey obtained an injunction against the judgment and execution, which was dissolved on 18 April, 1789; and afterwards avenditioni exponas was issued 24 July, 1789, upon which the sheriff sold the land to the lessor of the plaintiff, and executed a deed to him dated 5 February, 1790.
On the other side it appeared that in June Term, 1783, in the same county court, one Devany brought suit against the same William Massey, upon a bond for 5,000 pounds weight of tobacco, and had judgment by default; and in September Term, 1783, he obtained a final judgment; whereupon execution issued, and on 22 June, 1784, the sheriff sold to Green Hill, he having express notice at the time of the purchase, of the judgment obtained by Bell's administrators, and being warned by the administrator not to purchase; and the sheriff executed a deed to him, dated 22 September, 1784. The defendant also made title another way: on 2 July, 1782, William Massey conveyed to his son, James Massey, and he in the month of June, 1784, to Hill; and in June, 1784, the deed from Massey to his son was registered; but Massey, the father, continued in possession until after the sale to Hill, and then moved away. This James Massey was not a person of any substantial property (73) at that time; sometimes he had and sometimes he had not property; what he had was brought from foreign places, and it was frequently claimed and recovered by better owners. In September or October, 1784, he offered to buy land of one of the witnesses, and offered Hill's bond in payment, upon which there was an endorsement of 200 paid to William Massey; and twelve months before that time the witness said it was talked of that William Massey had sold to his son; and another witness said that some time in 1784 James Massey drove beef from Hill's and delivered them to the old man, and late in 1784, or in 1785, let him have a horse; and that in 1784 James had several negroes. The original deed from William Massey to James was not produced, but the copy only — but one Joel Parish, whose name was subscribed as a witness, said he *Page 68 
had frequently endeavored to recollect whether he ever did attest such a deed, and he could not remember he ever did, or ever knew of such a conveyance.
This was the evidence on both sides.
ASHE, J., had retired from the bench before the arguments were closed.
This is a dispute of great consequence, and it is proper it should be well settled, and I very much regret the necessity I find myself under of deciding alone. However, ASHE, J., who hath just left the bench, conferred with me before he went away, and accords in the opinion I am about to deliver.
(He then stated the case, and proceeded thus:)
As to the deed from old Massey to James, which is argued to be (95) fraudulent, and therefore void. Fraud will certainly vitiate any transaction into which it enters. But it is a rule of law that fraud must be proven — it will not be sufficient to suggest it only. For my part, I cannot perceive any fraud in that transaction; but the jury have heard the evidence, and will draw their own conclusions. With respect to what is argued by the counsel for the defendant, that the judgment by default upon the tobacco bond, in June Term, 1783, binds equally with the final judgment of Bell's administrators. The taking a judgment for want of a defense on such a bond is not a final judgment — it is an interlocutory proceeding only. Before any execution can issue, a jury must be called in to assess the value, and then there must be another judgment entered to complete it. We are also agreed that a judgment binds the lands from the time it is pronounced, but in this wise only — it hinders the debtor from disposing of the land himself; but if a fi. fa. issues upon a subsequent judgment, and comes to the hand of the sheriff, and he sells the lands, the title of the vendee under such execution cannot ever afterwards be defeated — it is valid to every purpose. Were the law not so, it would be the most dangerous thing in the world to purchase lands at an execution sale. Dormant judgments might be revived a long time afterwards, and the innocent vendee evicted, without the possibility of ever regaining the purchase money. Who can he apply to for it? It is true, there was such a case decided at Morganton as that cited at the bar; but there the land was purchased by the plaintiff himself, as well as I can remember the case. So there was not the danger to purchasers, involved in that instance, that I have mentioned before. As *Page 69 
between creditor and creditor, it is not the first judgment, but the first execution that gives the preference.
So the defendant had a verdict and judgment.
Cited: S. v. Magness, post, 100; Hoke v. Henderson, 14 N.C. 18; Ricksv. Blount, 15 N.C. 133; Smith v. Spencer, 25 N.C. 267; Dobson v.Prather, 41 N.C. 35; Isler v. Moore, 67 N.C. 76; Woodley v. Gilliam,ibid., 239; Hadley v. Nash, 69 N.C. 164; Phillips v. Johnson, 77 N.C. 228.